## JOEL HAYDEN *vs.* DANIEL SMITH.

3. mortgaged land to H. S., in 1839, on the following condition : "Whereas H. S. has signed a note with said B., as surety, payable to D. S.; now if said B. shall save said H. S. from any trouble, cost or expense, by reason of signing said note, this deed to be void : " In 1841, B.'s right to redeem said land was attached, and was sold, in April 1843, on execution, and conveyed, by an officer's deed, to H. : In September 1843, H. S. assigned said mortgage to D. S., by a deed in these words : "Know all men, that in consideration of D. S. agreeing to release me from all liability, other than the use of my name in the collection of the same, of a joint and several note, signed by B. and myself, dated October 7th 1839, I hereby assign, transfer and set over to said D. S. all my right, interest and claim to the within mortgaged premises : " D. S. thereupon took peaceable possession of the land, and held possession, for the purpose of foreclosure : H. brought a bill in equity against D. S. to redeem said mortgaged land, and insisted that nothing was due on B.'s mortgage to H. S., inasmuch as by the instrument of assignment made by H. S. to D. S., H. S. was released from his liability as surety for B., and the land discharged from the incumbrance of said mortgage. *Held*, that said mortgage was not discharged, and that D. S. was entitled to hold the land, as against H., until H. should pay B.'s note to D. S.

THIS was a bill in equity, in which the plaintiff prayed to be let in to redeem a lot of land in Lanesborough. The allegations in the bill were, that Bushrod Buck, on the 7th of October 1839, conveyed the land in question, by a deed of mortgage, to Henry Shaw, upon the following condition ·

"Whereas said Shaw, on the 13th of September last, signed a note with said Buck, as surety, for $4000, payable to Daniel Smith, or order, in four years from date, with annual interest; now if said Buck shall save said Shaw from any trouble, cost or expense, by reason of signing said note, this deed is to be void; if not, to remain in full force:" That on the 26th of December 1839, said Buck, by his deed, made a further condition, as follows: "Also, in consideration that said Shaw has signed a note, on the 26th of December 1839, with said Buck, as surety, payable to Lyman Eldridge in one year from date, for the sum of $793·41; now if said Buck shall save said Shaw harmless from all cost, trouble and expense, by reason of signing said note, then the within deed is void; otherwise, remains in full force:" That said Shaw, on the 29th of September 1843, assigned said mortgage to the defendant, and that the deed of assignment was in the following words: "Know all men, that in consideration of Daniel Smith, of Adams, agreeing to release me from all liability, other than the use of my name in the collection of the same, of a joint and several note, signed by Bushrod Buck and myself, for $4000, dated October 7th 1839, I hereby assign, transfer and set over to said Daniel Smith all my right, interest and claim to the within mortgaged premises:" That the defendant, on said 29th of September 1843, received peaceable possession of said mortgaged land, for the purpose of foreclosure, and has since been in possession thereof: That said Buck, on the 15th of April 1842, conveyed the same land to Henry Marsh, by a deed of mortgage, conditioned to secure his note for $8000, and interest semiannually, in three years from date: That said Marsh, on the 27th of October 1842, assigned said note and mortgage to the plaintiff: That the right in equity, which said Buck had, on the 2d of August 1841, to redeem said land from said Shaw's mortgage, was sold on execution against said Buck, and conveyed by an officer's deed, dated April 28th 1843, to Sylvester Hale and Milo R. Eames, who, on the 1st of February 1844, conveyed said equity to the plaintiff, who still holds the same.

There were these further allegations in the bill; viz. that there was nothing due to the defendant on said mortgage made by Buck to Shaw, as; by the aforesaid instrument of September 29th 1843, made by said Shaw to the defendant, said Shaw was released from his liability as surety for said Buck, and said land was discharged from the incumbrance of said Shaw's mortgage; and that the other note, for $793·41, was paid.

The defendant's *answer* alleged that the attempt of the plaintiff to defeat his title was inequitable and unjust, as the plaintiff would, if successful, acquire a very large and valuable estate, worth $20,000, for an inadequate consideration, and deprive the defendant of all his security for his debt against Buck, who was insolvent; that if the plaintiff was purchaser and owner of Buck's right in equity, (which the defendant did not admit,) he became such with full knowledge of the defendant's just and lawful claim, as the mortgage to Marsh recited the prior mortgage now held by the defendant; that the note given by Buck and Shaw, and now owned by the defendant, is good, valid and unpaid, and that the defendant is entitled to hold said land, by said mortgage, until said note is paid; that Shaw's assignment of the note and mortgage to the defendant was not a release of said note; that the plaintiff had never called on the defendant to render an account of rents and profits; that the defendant was willing and. ready to have such course taken as is lawful and proper, and to do, and have done, all that is equitable; and that the allegations in the plaintiff's bill were bad in law. Wherefore the defendant asked for the same rights, as if he had demurred to the bill, and prayed that it might be dismissed.

*Rockwell & Colt*, for the plaintiff.

*Sumner & Sayles*, for the defendant.

DEWEY, J. The real purpose of the assignment of the mortgage of Bushrod Buck, made by Shaw to the defendant, on the 29th of September 1843, is quite obvious; and the instrument ought to be so construed as to secure that object, if it may be, consistently with the rules of law. The equity

of the case is obviously with the defendant, upon the question whether his note against Buck as principal, and Shaw as surety, shall constitute a lien upon the premises sought to be discharged, before the defendant can be required to release the mortgage assigned to him by Shaw. By the facts stated in the bill, it appears that the defendant, on the 13th of September 1839, lent to Bushrod Buck $4000, upon his note, with Shaw as surety for the payment of the same ; that to secure Shaw for thus becoming surety for Buck, he received the mortgage deed of October 7th 1839, the subject of the present bill, and what the plaintiff seeks to have released.

The debt to the defendant remaining unpaid on the 29th of September 1843, Shaw assigned the mortgage to him, upon certain stipulations therein contained. The object seems to have been, that the defendant should receive from Shaw a transfer of the mortgage, and thereafter rely solely upon that, and make no claim on Shaw personally for the payment of the note signed by him. All this is obviously enough expressed in the assignment. And, in point of fact, the defendant at once entered into peaceable possession, for foreclosure of the mortgage, under his assignment. But it is now insisted, that whatever may have been the intention of the parties, they have so unskilfully and irregularly executed this instrument of assignment, as to have defeated that intention ; and that the defendant, while he supposed he was substituting the security of the mortgage on real estate of Buck, for the personal security of Shaw, has in fact discharged both, and is now left without security for his debt of $4000. That the defendant intended no such result, as we have already stated, is quite obvious. Is such the legal effect of the assignment?

It is contended that it is so, and that the mortgage to Shaw is fully discharged, because, from the very terms of the mortgage, it was to be void, " if said Buck shall save said Shaw from any trouble, cost or expense, by reason of signing said note " as surety ; and it is alleged that Shaw has been saved from all trouble, cost and expense therefor, and that, by force

and effect of the arrangement made by the defendant with Shaw, he could be no further damnified. It is true that in the assignment from Shaw to the defendant, it is recited that in consideration of the defendant's agreeing to release him from all liability other than the use of his name in the collection of the note secured by this mortgage, he assigns to the defendant all his right and interest and claim to the mortgaged premises. This instrument is not signed by the defendant, though accepted by him, and to some purposes assented to by him. But we do not think it necessarily is to have the same effect as a release, under his hand and seal, to Shaw, might have had. There might have been a technical release to Shaw, the effect of which, perhaps, could not be avoided. But in giving a construction to this instrument of assignment, when called upon to declare that on its face it has discharged all liability on the part of Shaw, we may take into consideration the entire language and purpose of the instrument. And, in so doing, we are satisfied that it was only a substitution of the mortgage of real estate, for the personal liability of Shaw, and intended to be effected through the name of Shaw. Indeed, the use of his name, in the collection of the note, was distinctly stipulated for in the assign ment. It contemplated the use of it, so far as was necessary to perfect the lien upon the real estate. The note has not been paid either by Buck or Shaw. It is still due, and may be enforced against Shaw, unless discharged by the recital in the assignment. We think that the recital is not to be so construed as to defeat the whole effect of the assignment; that it was only a qualified discharge, to the extent compatible with the continuance of the security by mortgage ; and that it would be inconsistent with the principles of equity to require the defendant to execute a release of the mortgage assigned to him by Shaw, before the payment of the note of $4000, and any interest that may be due thereon. That there was a lien upon the premises, for the debt to the defendant, is no surprise upon the plaintiff; and that it was made known to him at the time he first became interested in this

estate, is apparent from the language of the mortgage deed of Buck to Henry Marsh, of the 15th of April 1842, and by Marsh assigned to the plaintiff on the 27th of October 1842; which mortgage deed was in terms made subject " to a prior mortgage to Daniel Smith," the present defendant. Perhaps this has no legal effect upon the question in issue; but it seems strongly to show that all parties understood the mortgage to Shaw was a lien upon the property, to secure the note to the defendant.

The result, therefore, is, that the plaintiff will be entitled to redeem the premises upon paying the amount due to the defendant upon the note described in the mortgage assigned to him by Shaw.